IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

JEANNE SISK,                                          )
                                                     )
                   Plaintiff,                        )
                                                     )
v.                                                   )   Civ. Action No. 11-121-RGA-CJB
                                                     )
SUSSEX COUNTY, a political subdivision               )
of the State of Delaware, BOARD OF                   )
ADJUSTMENT OF SUSSEX COUNTY,                         )
a political subdivision of Sussex County,            )
DAVID B. BAKER, in his individual                    )
and official capacity as Sussex County's             )
County Administrator, LAWRENCE B.                    )
LANK, in his individual and official                 )
capacity as the head of Sussex County's              )
Planning and Zoning, DALE A.                         )
CALLAWAY, in his individual and official             )
capacity as Chair of the Board of                    )
Adjustment and Board Members                         )
JEFFREY HUDSON, in his individual and                )
official capacity, RONALD G. MCCABE,                 )
in his individual and official capacity, JOHN        )
M. MILLS, in his individual and official             )
capacity, and E. BRENT WORKMAN,                      )
in his individual and official capacity,             )
                                                     )
                   Defendants.                       )

## REPORT AND RECOMMENDATION

In this action filed pursuant to 42 U.S.C. §§ 1983 and 1985, Plaintiff Jeanne Sisk

("Plaintiff"), seeks relief for alleged constitutional violations committed by Defendants Sussex

County ("the County"), the Board of Adjustment of Sussex County ("the Board"), David Baker

(Sussex County's Administrator), Lawrence B. Lank (Sussex County's Director of Planning and

Zoning), and five members of the Board (Dale A. Callaway, Jeffrey Hudson, Ronald G. McCabe,

1

John M. Mills, and E. Brent Workman) (collectively "Defendants"). Pending before the Court is

a motion to dismiss all claims filed by Defendants pursuant to Fed. R. Civ. P. 12(b)(6) (the

"motion"). (D.I. 15) For the reasons that follow, I recommend that the Court GRANT

Defendants' motion.

## I.    BACKGROUND

### A.    Plaintiff's Complaint

On February 7, 2011,[1] Plaintiff filed a three-count Complaint against several individuals

and governmental entities associated with Sussex County, Delaware. (D.I. 1) Plaintiff alleges

that when she attempted to replace an outdoor storage shed located near her residence, those

individual and governmental entities violated her constitutional rights by selectively enforcing

county zoning ordinances, misrepresenting procedures relating to those ordinances, and denying

her request for a variance without a rational basis. (*Id.* at ¶¶ 10–31) Plaintiff asserts (1)

violations of her substantive due process rights by the Board; (2) retaliation for the exercise by

Plaintiff of her free speech rights under the First Amendment to the U.S. Constitution; and (3)

violations of procedural due process by the County.[2] (*Id.*) Plaintiff seeks declaratory, monetary,

and injunctive relief for the alleged wrongdoing. (*Id.* at pgs. 7–8)

---

[1]    Plaintiff states in her brief in opposition to Defendants' motion that this action
was first brought on February 1, 2011, and that an amended complaint was filed on February 8,
2011. (D.I. 21 at 4) Throughout that brief, Plaintiff cites to the paragraphs of a "First Amended
Complaint." (*Id.* at 5–7) However, as Plaintiff's counsel acknowledged during oral argument,
Plaintiff never filed an amended complaint, and no such document appears on the docket. (D.I.
23 ("Tr.") at 31)

[2]    Plaintiff's third count includes somewhat conflicting language regarding the basis
for the requested relief; the contours of Count III are discussed more fully below.

## B.    Factual Background

The factual bases for Plaintiff's requested relief are difficult to discern from the four

corners of the Complaint.  Although Plaintiff's claims implicate a number of written

administrative and judicial decisions, Plaintiff included no exhibits to the Complaint, and the

Complaint itself offers only a limited sketch of the relevant underlying facts.  However,

Defendants submitted a number of publicly available documents that relate to the parties' dispute

as exhibits to their motion.  In reciting the factual background, the Court thus draws not only

from Plaintiff's Complaint, but also from the documentary record submitted by Defendants.[3]

Plaintiff is a 66-year-old resident of the Sea Air Mobile Home Park ("Sea Air") in

Rehoboth Beach, Delaware.  (D.I. 1 at ¶ 2)  In early 2008, a shed located on Plaintiff's mobile

home lot was destroyed by weather.  (*Id.* at ¶ 10)  In April 2008, Plaintiff first took steps to

replace this shed by soliciting advice from County officials.  (*Id.* at ¶ 11)  Those officials told

Plaintiff that she was required to submit a land survey and a variance request from applicable

zoning laws before installing a replacement shed.  (*Id.* at ¶ 12)  Because she believed that any

replacement shed would be "grand-fathered in" to compliance with County ordinances, Plaintiff

did not obtain a land survey or request a variance before constructing the replacement shed, nor

---

[3]        Courts faced with a motion to dismiss must generally limit their consideration
solely to "the allegations contained in the complaint, exhibits attached to the complaint and
matters of public record." *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d
1192, 1196 (3d Cir. 1993).  However, courts may also consider "undisputedly authentic
document[s] that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims
are based on the [attached] document[s]." *Id.*; *see also U.S. Express Lines, Ltd. v. Higgins*, 281
F.3d 383, 388 (3d Cir. 2002) ("Although a district court may not consider matters extraneous to
the pleadings, a document integral to or explicitly relied upon in the complaint may be
considered without converting the motion to dismiss into one for summary judgment.") (internal
citations, quotation marks, and emphases omitted).

did she otherwise obtain a permit for that shed. (*Id.* at ¶¶ 14–16; D.I. 16, ex. B)

Plaintiff alleges that from May 2008 to January 2009 she received three notices that the replacement shed violated local zoning ordinances; one of these written notices (dated January 28, 2009, and issued by third-party Sussex County Zoning Inspector Dean Pettyjohn) was submitted by Defendants as an exhibit to their motion. (D.I. 1 at ¶ 15; D.I. 16, ex. B) This notice was issued for "[p]lacement of an accessory structure (shed) without proper approvals," and provided that in order to bring the shed into compliance, Plaintiff was required to "submit an approval letter from Sea Air Park Management and a survey showing the setbacks of the shed placement." (D.I. 16, ex. B)[4] The notice stated that if "setbacks cannot be met [Plaintiff] must apply for a $400.00 variance hearing before a permit can be obtained." (*Id.*) The violation was required to be corrected by no later than February 6, 2009. (*Id.*)

On June 9, 2009, the County filed a complaint in the Delaware Court of Chancery against Plaintiff (and her co-tenant on the mobile home property, Beulah McQueen), seeking, *inter alia*, a declaration that Plaintiff was in violation of the Sussex County Code and that Plaintiff be required to bring the property into compliance within 30 days. (D.I. 16, ex. C) Plaintiff contends

---

[4]     The requirement for Plaintiff to obtain Sea Air's approval and to obtain a land survey appears to stem from a May 30, 2007 agreement between Sea Air's owner (Sun Communities) and Sussex County (hereinafter, "the 2007 Sea Air-County Agreement"). (D.I. 16, ex. A; *id.*, ex. I at 2–3) Sea Air was developed prior to the adoption of Sussex County's current zoning code; as a result, many structures in Sea Air violate provisions of that code. (*Id.*, ex. I at 3) In the 2007 Sea Air-County Agreement, Sussex County agreed to treat the existing structures in Sea Air as non-conforming structures, but not to issue any zoning violations for them. (*Id.*, ex. A) Any new Sea Air structures would be subject to the then-current zoning code. (*Id.*) Furthermore, if a Sea Air tenant wished to erect a new structure, he or she would have to obtain Sea Air's written approval and obtain a land survey showing the proposed location of the current structure. (*Id.*) The latter requirement—that the County be provided with a survey—was meant to help the County determine whether the proposed new structure violated building setback requirements or other zoning provisions. (*Id.*, ex. I at 2)

4

that this suit was "maliciously filed . . . to punish [her], both for her outspoken criticism of [the] County's policies and as retaliation for asserting legal rights." (D.I. 1 at ¶ 31) A stipulated dismissal of the Chancery Court action was granted on April 20, 2011. (D.I. 16, ex. D)

On June 25, 2009, Plaintiff filed with the Board an appeal of, *inter alia*, the January 28, 2009 violation notice, along with a variance application; this filing was initially denied on the grounds that the appeal was untimely and that the application did not include the required land survey. (D.I. 1 at ¶ 16; D.I. 16, ex. I at 2, 4) On July 27, 2009, Plaintiff filed an amended notice of appeal and request for a variance with the Board. (D.I. 16, ex. F; *id.*, ex. I at 4) The Board accepted this amended filing on July 29, 2009. (*Id.*, ex. I at 4) On October 19, 2009, the Board held a hearing on Plaintiff's requests for relief. (*Id.*, ex. G at 7) In a written decision dated November 20, 2009, the Board denied Plaintiff's appeal and her request for a variance. (*Id.*, ex. G at 9) According to the written decision, the Board's denial was based on Plaintiff's failure to obtain the required land survey. (*Id.*) The Board noted that not only was such a survey required by the 2007 Sea Air-County Agreement,[5] but also that without a survey, "it is impossible to determine the exact location of the shed and any necessary variance that [Plaintiff] actually needs on the property" or "whether or not the new structure will cause her to exceed the 35% lot coverage limits for lots in a mobile home park." (*Id.*)

Notwithstanding the reasoning set forth in the Board's written decision, Plaintiff contends that the Board "selectively denied [her] appeal variance request without a rational basis," that her appeal was "'dead on arrival,'" that the Board used the lack of a survey as a "pretext" to deny her

---

[5]      As previously noted, Sea Air is owned by Sun Communities. Hereafter, Sea Air and Sun Communities will at times collectively be referred to as "Sea Air."

application, and that the Board could have "pass[ed] a conditional approval pending a survey." (D.I. 1 at ¶¶ 25–28) Plaintiff further contends that after denying her appeal and request for a variance, the Board created a new rule requiring surveys, which Plaintiff contends was "intended to mask its denial of [Plaintiff's] request without a rational basis." (*Id.* at ¶ 29)

On December 16, 2009, Plaintiff filed a Notice of Appeal in Sussex County Superior Court, seeking reversal of the Board's decisions. (D.I. 16, ex. H) On February 25, 2011, the Superior Court affirmed the Board's decisions in a letter opinion. (*Id.*, ex. I)

## C. Defendants' Motion to Dismiss

On May 2, 2011, Defendants moved to dismiss Plaintiff's Complaint. (D.I. 15) Defendants argue that "Plaintiff's threadbare allegations and conclusory recitation of elements constitute a failure to state a plausible claim for relief" under the applicable pleading standards, and "are barred by application of *res judicata*." (D.I. 16 at 3) In addition, Defendants argue that Plaintiff failed to allege a valid procedural due process claim because "a meaningful post-deprivation remedy for [any alleged] loss [was] available." (*Id.*) Plaintiff timely opposed Defendants' motion, arguing, *inter alia*, that her claims are sufficiently pled. (*See* D.I. 21)

On March 27, 2012, this case was referred to me to hear and resolve all pretrial matters. On May 17, 2012, the Court heard oral argument regarding the motion. (D.I. 23)

## II. STANDARD OF REVIEW

The sufficiency of pleadings for non-fraud cases is governed by Federal Rule of Civil Procedure 8, which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). When presented with a Rule 12(b)(6) motion to dismiss for failure to state a claim, the Court conducts a two-part analysis. *Fowler v. UPMC*

6

*Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). First, the Court separates the factual and legal elements of a claim, accepting "all of the complaint's well-pleaded facts as true, but [disregarding] any legal conclusions." *Id.* at 210–11. Second, the Court determines "whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Id.* at 211 (quoting *Ashcroft v. Iqbal*, 129 S.Ct 1937, 1950 (2009)). Thus, although a non-fraud claim need not be pled with particularity or specificity, that claim must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks and citation omitted).

Determining whether a claim is plausible is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). A plausible claim does more than merely allege entitlement to relief; it must also demonstrate the basis for that "entitlement with its facts." *Fowler*, 578 F.3d at 211 (citations omitted). Thus, a claimant's "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555; *accord Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). In other words, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). In assessing the plausibility of a claim, the court must "construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Fowler*, 578 F.3d at 210 (citing *Phillips v. Cnty. of Allegheny*, 515 F.3d

7

224, 233 (3d Cir. 2008)).

## III.  DISCUSSION

### A.  Count I: Substantive Due Process

Plaintiff's first Count is based on alleged violations of her substantive due process rights. To state a Fourteenth Amendment substantive due process claim pursuant to 42 U.S.C. § 1983, a plaintiff must first establish that she has a protected property interest. *See, e.g.*, *Nicholas v. Penn. State Univ.*, 227 F.3d 133, 139–40 (3d Cir. 2000). Assuming that this threshold is met, a plaintiff must also state sufficient facts that, taken as true, would allow a court to conclude that the government engaged in conduct that is arbitrary in nature, because the "core of the concept of due process is protection against arbitrary action." *United Artists Theatre Circuit, Inc. v. Twp. of Warrington, PA*, 316 F.3d 392, 399 (3d Cir. 2003) (internal quotation marks and citation omitted). However, for conduct to be "arbitrary in the constitutional sense," such that it may give rise to a substantive due process claim, the governmental action must "shock[] the conscience." *Id.* at 399–400. This conscience-shocking standard is satisfied by "only the most egregious official conduct," such as corruption, self-dealing, or bias against a minority group. *Eichenlaub v. Twp. of Indiana*, 385 F.3d 274, 285–86 (3d Cir. 2004).

"The exact degree of wrongfulness necessary to reach the 'conscience-shocking' level depends upon the circumstances of a particular case." *Miller v. City of Philadelphia*, 174 F.3d 368, 375 (3d Cir. 1999); *see also United Artists*, 316 F.3d at 400. However, the Third Circuit has explained that in the zoning and land-use context, the "shocks-the-conscience" standard is "designed to avoid converting federal courts into super zoning tribunals." *Eichenlaub*, 385 F.3d at 285. Indeed, because "[l]and-use decisions are matters of local concern, [such] disputes

should not be transformed into substantive due process claims based only on allegations that government officials acted with 'improper' motives." *United Artists*, 316 F.3d at 402.

### 1. Nature of Allegedly Protected Property Interest

The first question for the Court is whether Plaintiff has adequately invoked a protected property interest. In Count I, Plaintiff alleges that her "land ownership is a property interest worthy of substantive due process protection." (D.I. 1 at ¶ 33) However, Plaintiff does not explicitly claim to own the land upon which the replacement shed was erected. Indeed, in another paragraph of her Complaint she refers to Sea Air as her "landlord," (D.I. 1 at ¶ 20), and at oral argument, her counsel asserted that the replacement shed was placed on land that is owned by Sea Air and rented by Plaintiff (Tr. at 43). Viewing the Complaint in the light most favorable to Plaintiff, the Court finds that Plaintiff has satisfied the first substantive due process element by asserting a protected property interest in the use and enjoyment of her leased land. *See, e.g.*, *Assocs. In Obstetrics & Gynecology v. Upper Merion Twp.*, 270 F. Supp. 2d 633, 655 (E.D. Pa. 2003) ("Use and enjoyment of property are interests protected by substantive due process . . . . This interest applies to leaseholds as well as ownership.") (citing *Neiderhiser v. Borough of Berwick*, 840 F.2d 213, 218 (3d Cir. 1988)).

### 2. Nature of Alleged Conduct

The second element of the substantive due process analysis requires the Court to assess whether the alleged facts could give rise to a conclusion that Defendants' conduct "shocks the conscience." *United Artists*, 316 F.3d at 400. Count I is essentially limited to conclusory

statements and a recitation of the applicable legal standards.[6]  However, the Count also

incorporates the earlier paragraphs in the Complaint by reference.  (D.I. 1 at ¶ 32)  Reading the

Complaint in the light most favorable to Plaintiff, the Court discerns three possible bases for

Count I:  (1) the imposition of "onerous" zoning requirements due to Defendants' animus toward

her; (2) the Board's selective enforcement of its zoning laws; and (3) the lack of any rational

basis for the Board's denial of her appeal and variance request.  The Court considers each of

these alleged acts in turn, and assesses whether, drawing all reasonable inferences in Plaintiff's

favor, a reasonable jury could conclude that these acts, as pled, "shock the conscience."

### a.    Alleged Imposition of "Onerous" Requirements Due to Animus

Plaintiff alleges in Count I that "Defendants impos[ed] more onerous [zoning]

requirements [on her] due to their animosity against her."  (D.I. 1 at ¶ 37)  Count I does not

identify what those "more onerous requirements" were, what the standard "requirements" in the

"local zoning regulations" are, or what facts indicate that Defendants harbored any "animosity"

towards her.  The Court therefore looks elsewhere in the Complaint for additional factual detail

regarding this allegation.

In an earlier portion of her Complaint, Plaintiff indicates that "the violation notice[s]

---

[6]    For example, in Count I, Plaintiff contends that Defendants' "decision[-]making
and actions invaded upon [her] use and enjoyment of her property," and that these actions were
"arbitrar[y] and capricious."  (D.I. 1 at ¶¶ 34–35)  However, this contention does little more than
recite the applicable legal standard.  *Cf. DeBlasio v. Zoning Bd. of Adjustment for the Twp. of
West Amwell*, 53 F.3d 592, 601 (3d Cir. 1995) (noting that "where the governmental decision in
question impinges upon a landowner's *use and enjoyment of property*, a land-owning plaintiff
states a substantive due process claim where . . . she alleges that the decision limiting the
intended land use was *arbitrarily or irrationally reached*.") (emphasis added), *rev'd on other
grounds*, *United Artists*, 316 F.3d 392.  Such a bare recitation of legal elements, absent any
underlying facts, is insufficient to satisfy Rule 8.  *See Iqbal*, 556 U.S. at 678.

placed additional onerous conditions on her application [for a variance], such as requiring

permission from her landlord," and requiring her to "submit a land survey and a variance request

to install the new shed." (D.I. 1 at ¶¶ 12, 20)  However, the requirement to obtain Sea Air's

permission and a land survey appears to stem from the 2007 Sea Air-County Agreement—an

agreement executed roughly one year prior to Plaintiff's installation of the replacement shed.

(D.I. 16, ex. A at ¶¶ 3–5)  Plaintiff does not allege in the Complaint nor explain in her opposition

brief how enforcement of a rule established over two years prior to her variance request could

have been motivated by any discriminatory animus toward her.

More broadly, Plaintiff alleges no facts in the Complaint giving content to the charge that

County and/or Board officials harbored "animosity" toward her.  Plaintiff identifies no

employees who allegedly harbored such animus, and no acts or statements by such individuals

allegedly demonstrating that animus.[7]  Even if Plaintiff had done so, only conduct of the most

egregious sort will allow a substantive due process claim to survive a motion to dismiss.  *See*

*Skiles v. City of Reading*, 449 F. App'x 153, 158 (3d Cir. 2011) (holding that even where

plaintiff alleged that defendant City of Reading's employees used a derogatory slur towards him

when determining that his night club should be closed due to zoning and health code violations,

such allegations fell "woefully short" of governmental conduct that "shocks the conscience").  At

a minimum, however, if a plaintiff asserts that a governmental actor harbored personal animosity

---

[7]        Plaintiff does allege that she "is an outspoken critic of the county's policies on
behalf of the Delaware Modular Homeowner's Association and specifically her own dealings
with the Sea Air Mobile Home Park in Rehoboth Beach" and that "[t]hroughout [the time period
relating to her variance request, she] publicly spoke out against the County's illegal conduct."
(D.I. 1 at ¶¶ 2, 30)  But Plaintiff never links her past criticism to the alleged animus, and offers
no evidence or facts which would allow the Court to infer that the Board's decision was based
upon impermissible animus.

toward her—of the type sufficient to prompt that actor to engage in conscience-shocking

behavior—then she must plead at least some facts that actually demonstrate the harboring of such

animus.  No such facts are set forth in the instant Complaint.

Although the Court must view the Complaint in the light most favorable to Plaintiff, it is

not required to credit a bare allegation that the County, the Board, two individual zoning

officials, and five members of the Board were motivated by unspecified and unsubstantiated

animosity to deny Plaintiff's 2009 variance request.  This is especially so when the only

documentary evidence of record indicates that the 2007 Sea Air-County Agreement was the

source of the two additional "onerous requirements" Plaintiff cites as the basis for the alleged

constitutional violation.  *See ALA, Inc. v. CCAIR, Inc.*, 29 F.3d 855, 859 n.8 (3d Cir. 1994)

(holding that, to the extent that matters of public record or undisputedly authentic documents

contradict factual allegations in pleadings, the documents will control).

### b.    Alleged Selective Enforcement of Zoning Laws

Plaintiff also contends in Count I that Defendants "selectively enforced local zoning

regulations," and elsewhere in the Complaint asserts that her variance request was "routine and

[that] previously the [Board] granted the applications for other citizens."  (D.I. 1 at ¶¶ 17, 37)  In

other words, Plaintiff's Complaint could be read such that the selective enforcement of

applicable zoning ordinances and the 2007 Sea Air-County Agreement are alleged to form the

basis for a substantive due process violation.  To the extent that Plaintiff intends this allegation of

selective enforcement to support Count I, it is insufficient to satisfy Rule 8, for two reasons.

First, Plaintiff offers no facts supporting the allegation that the County selectively

enforced the applicable provisions of its zoning laws.  Nowhere in the Complaint does Plaintiff

12

cite any underlying data, statistics, or examples from similarly situated citizens that might show

she was a victim of selective enforcement. Because Plaintiff relies solely on a conclusory

accusation of selective enforcement as compared to unidentified "other citizens," Plaintiff's

claim cannot survive a Rule 8 challenge. *Iqbal*, 556 U.S. at 678.

Second, even if Plaintiff *had* set forth some facts supporting a claim of selective

enforcement, such a claim (in and of itself) would be insufficient to survive a motion to dismiss.

In *Eichenlaub v. Township of Indiana*, the Third Circuit discussed the permissible contours of a

substantive due process claim arising out of a zoning dispute:

> [T]he misconduct here does not rise sufficiently above that at issue
> in a normal zoning dispute to pass the "shocks the conscience
> test."[] *Basically, the Eichenlaubs assert that zoning officials
> applied subdivision requirements to their property that were not
> applied to other parcels*; that they pursued unannounced and
> unnecessary inspection and enforcement actions; that they delayed
> certain permits and approvals; [and] that they improperly increased
> tax assessments . . . . [T]hese complaints are examples the kind of
> disagreement that is frequent in planning disputes.

385 F.3d 274, 286 (3d Cir. 2004) (emphasis added). The Third Circuit contrasted these types of

"disagreement[s]" with the kind of conduct that could shock the conscience, such as

"allegation[s] of corruption or self-dealing"; "hamper[ing] development in order to interfere with

otherwise constitutionally protected activity at [a] project site"; action taken "because of some

bias against an ethnic group"; or "a virtual 'taking.'" *Id.* To the extent that Plaintiff asserts that

the Board selectively enforced the County's zoning laws to disadvantage her request for a

variance for her shed, such an allegation is legally insufficient to state a substantive due process

claim.[8] *See id.*; *see also Maple Props., Inc. v. Twp. of Upper Providence*, 151 F. App'x 174,

179–80 (3d Cir. 2005) (affirming dismissal of substantive due process claim because, *inter alia*,

plaintiff's allegation that defendant township's zoning decision was "targeted selectively at

[plaintiff,]" did not meet "shock the conscience" test).

c.    <strong>Alleged Lack of Rational Basis for Board's Decision</strong>

Plaintiff also criticizes the Board for denying her appeal "without a rational basis,"

contending that her "appeal was 'dead on arrival' [as] the Board never seriously considered the

merits of her case." (D.I. 1 at ¶¶ 26, 29). Even if *this* conduct were meant to be the basis of her

claim in Count I, Plaintiff has similarly not alleged sufficient facts to plausibly support these

conclusory statements. Indeed, the Board's November 2009 written decision indicates that it (1)

held a hearing on Plaintiff's appeal and request for a variance; (2) heard testimony from Plaintiff

and others; and (3) considered various zoning ordinances and legal principles in coming to a

decision on the appeal and associated variance request. (D.I. 16 at ex. G) Plaintiff does not

allege that she or other witnesses were denied the opportunity to be heard, or that the Board

issued a decision without explaining the basis for its reasoning—indeed, she alleges no

underlying factual support for her assertions that her appeal was "dead on arrival" or was "never

---

[8]    In her Complaint, Plaintiff contends (with no supporting factual averments) that her destroyed shed was "grandfathered in." (D.I. 1 at ¶ 14) Plaintiff appears to assert that under County zoning law, she should have been able to construct her replacement shed without adhering to zoning restrictions. Plaintiff thus appears to disagree with Defendants' decision that, although a preexisting shed was deemed "grandfathered," Plaintiff was not (and would not) be granted a permanent exemption from compliance with zoning laws for any new structures (such as the replacement shed) that were placed on Sea Air's land. To the extent that Plaintiff premises her substantive due process claim on this understanding of County law, her claim similarly should be dismissed. The mere fact that Plaintiff "disagree[s] with a municipality's zoning decision is insufficient to state a substantive due process claim." *Sauers v. Lower Southampton Twp.*, 403 F. App'x 661, 664 (3d Cir. 2010).

seriously considered." In the absence of these type of factual allegations, Plaintiff's contention is

conclusory and unsupported—and appears to be flatly contradicted by the undisputed

documentary record. Under these circumstances, Plaintiff has failed to satisfy the requirements

of Rule 8. *See, e.g., Sauers v. Lower Southampton Twp.*, 403 F. App'x 661, 664 (3d Cir. 2010)

(affirming the dismissal of a substantive due process claim where, although the plaintiff alleged

that the defendant's "zoning decision was procured by fraud," such an allegation was

"conclusory" and insufficient to satisfy the "shocks the conscience" test); *Maple Props.*, 151 F.

App'x at 179–80 (affirming dismissal of substantive due process claim where, *inter alia*, plaintiff

claimed that defendant township's zoning action was "irrational in light of land use goals, was

passed 'in the dark' and without a 'deliberative process'").

### 3.   Conclusion Regarding Count I

As discussed above, Count I itself provides no factual bases for Plaintiff's claims, and

even piecing together allegations from elsewhere in the Complaint, Plaintiff has failed to state a

plausible claim for violations of her substantive due process rights. At this stage, even drawing

all inferences in favor of Plaintiff, she has, at most, simply alleged facts showing that she is an

aggrieved leaseholder who disagrees with municipal zoning decisions, not the victim of arbitrary

conduct that "shocks the conscience." As such, Count I should be dismissed.

### B.   Count II: Constitutional Retaliation

Count II of Plaintiff's Complaint alleges that Defendants "took action adverse to Plaintiff,

as retaliation for Plaintiff's First Amendment protected speech in asserting her legal and appeal

rights." (D.I. 1 at ¶ 39) Plaintiff alleges that Defendants took three retaliatory actions to punish

her: (1) issuing arbitrary zoning violations; (2) filing an action in Chancery Court; and (3)

15

refusing to allow a variance for the replacement shed. (*Id.* at ¶ 40)

To state a First Amendment retaliation claim, Plaintiff must allege: (1) that the activity in question is protected by the First Amendment; and (2) that the protected activity was a substantial factor in the alleged retaliatory action. *Hill v. Borough of Kutztown*, 455 F.3d 225, 241 (3d Cir. 2006). "The threshold requirement is that the plaintiff identify the protected activity that allegedly spurred the retaliation." *Eichenlaub*, 385 F.3d at 282. Here, Plaintiff cites two activities that allegedly gave rise to the retaliation: (1) speech that was critical of Defendants; and (2) "asserting her legal and appeal rights." (*See* D.I. 1 at ¶ 39; Tr. at 34–40)[9]

As to the first activity, Plaintiff alleges that she "is an outspoken critic of the [C]ounty's policies," and that at some point relating to the events giving rise to the Complaint, she "publicly spoke out against the County's illegal conduct." (D.I. 1 at ¶¶ 2, 30)  Plaintiff never identifies where, when, or to whom her criticism was directed, or whether it was oral, written, or both. Plaintiff never identifies if she made her critical comments in a public or private forum.  Plaintiff also does not provide any factual detail as to the content of her criticisms.  It is unclear if Plaintiff criticized a public policy or law, the application of law or policy, criticized elected officials generally, or made some other kind of critical comments.  Under these circumstances, Plaintiff has not pled sufficient facts to substantiate the first element of a plausible retaliation claim. *See, e.g., Adderly v. Ferrier*, 419 F. App'x 135, 141 n.5 (3d Cir. 2011) (holding that a retaliation

---

[9]     The Court notes that while Count II cites the assertion of Plaintiff's "legal and appeal rights" as the type of "protected speech" that spurred the alleged retaliation, (D.I. 1 at ¶ 39), Plaintiff's prior speech that was critical of the Board and County is nowhere mentioned in that Count (*id.* at ¶¶ 38–42). Instead, the fact that Plaintiff spoke critically of Defendants' policies and actions is alluded to only in other portions of the Complaint. (*Id.* at ¶¶ 2, 30, 31) At oral argument, Plaintiff's counsel indicated that her speech critical of the County was also alleged to be protected speech that motivated the prohibited retaliation. (Tr. at 34–40)

claim was properly dismissed when the complaint provided "no details regarding what speech [plaintiff] was allegedly punished for"); *Bowlin v. Arkansas Dep't of Health*, No. 3:08-CV-00029 BSM, 2009 WL 1286314, at *6 (E.D. Ark. May 8, 2009) (dismissing retaliation claim where the complaint provided "no details or context regarding the speech at issue").

Even if Plaintiff had sufficiently identified the critical speech in question, Plaintiff has not sufficiently alleged a causal link between the alleged retaliation and her unspecified criticism of Defendants. In Count II, Plaintiff states the bare legal conclusion that "[t]he First Amendment protected activity was a substantial or motivating factor in the adverse action against [Plaintiff]." (D.I. 1 at ¶ 40) When assessing whether protected speech was a substantial factor in the retaliatory action, Courts will generally look not only to direct evidence of a link between the protected speech and the retaliation, but to the surrounding circumstances. *See, e.g., Ivan v. Cnty. of Middlesex*, 595 F. Supp. 2d 425, 472 (D.N.J. 2009) (noting that a connection between the protected activity and an adverse action can be demonstrated by direct evidence, or by circumstantial evidence, including temporal proximity of the two, the adequacy of any explanation for the adverse action, or other antagonism). But Plaintiff alleges no facts—and cites no direct or circumstantial evidence—that might support this conclusion. She does not allege, for example, that Board members ever made any statements that Plaintiff would be punished for speaking out. Similarly, Plaintiff provides no indication of who made the decision to issue the zoning violations alleged in the Complaint, or how the Board made the decision to file the action in Chancery Court. Because Plaintiff does not provide any facts relating to the nature, content, forum, or timing of her speech, or any facts underlying the alleged retaliatory action, the Court

17

cannot draw any plausible connection between this undefined speech and the alleged retaliation.[10]

As to the second form of protected activity, Plaintiff does not explicitly identify in the Complaint what "legal and appeal rights" prompted the alleged retaliation, but it seems clear that she is referring at least to her appeal to the Board of "numerous decisions related to County officials' refusal to grant her [variance] applications." (D.I. 1 at ¶¶ 16, 24) The Supreme Court has recognized that the First Amendment "protects the right of individuals to appeal to courts and other forums established by the government for resolution of legal disputes." *Borough of Duryea, Pa. v. Guarnieri*, 131 S. Ct. 2488, 2494 (2011).[11] As the parties both acknowledged at oral argument, Plaintiff's appeal to the Board falls within the category of activities protected by the First Amendment. (Tr. at 22, 34–40)

However, as was the case with the critical speech discussed above, Plaintiff fails to allege any causal link between the pursuit of her appeal of the zoning violations and the three alleged retaliatory actions in Count II. As to the first of these actions—the arbitrary zoning violations—all alleged zoning violations were issued prior to February 2009, and Plaintiff's appeal to the Board did not occur until much later in 2009. Thus, no causal link between these events could be inferred. The same is true for second action—the prosecution of the Chancery Court lawsuit—because that suit was filed prior to Plaintiff's appeal to the Board.

---

[10]   For example, without any detail in the Complaint about the time frames in which Plaintiff made these critical comments, or how those statements relate to the sequence of alleged retaliatory actions, the Court can not discern whether the temporal proximity of those actions to the protected speech would lead to an inference that Defendants acted with retaliatory motive.

[11]   Claims of this sort arise under the "Petition Clause" of the First Amendment, not the "Free Speech Clause" referenced in Count II of Plaintiff's Complaint. *See Guarnieri*, 131 S.Ct. at 2494. Viewing the Complaint in the light most favorable to Plaintiff, the Court interprets Count II as encompassing activities that are protected by both clauses of the First Amendment.

As for Plaintiff's third alleged retaliatory action—that Defendants acted irrationally in denying her appeal and variance request as a form of retaliation for the filing of the appeal itself—the Court discerns no facts pled that would support a causal link between these events. As previously noted, Plaintiff does contend that her "appeal was 'dead on arrival,'" and that the Board "never seriously considered the merits of her case." (D.I. 1 at ¶ 26) However, Plaintiff never draws a retaliatory link between the mere filing of her appeal/request and its eventual denial, nor does she specify whether anyone from the County ever stated or implied that her appeal was "dead on arrival." At oral argument, Plaintiff's counsel noted that Plaintiff need not come forward with direct evidence that the Board's decision to deny her appeal and request was designed to punish her for filing in the first place. (Tr. at 38–39); *see also Kachmar v. SunGard Data Sys., Inc.*, 109 F.3d 173, 177 (3d Cir. 1998) (noting that a causal link may be shown through "circumstantial evidence"). But Plaintiff pled no circumstantial facts from which the Court could plausibly draw that link, other than the fact that her appeal was denied. And if an adverse outcome from an appeal could alone support a claim for retaliation, then all adverse administrative decisions would be transformed into potential constitutional violations.[12] Stating a plausible claim for First Amendment retaliation requires more.

---

[12]     Because Plaintiff has failed to include any factual allegations from which a causal link can be drawn between Plaintiff's constitutionally protected activities and the Board's actions, this case is distinguishable from the recent decision cited by Plaintiff's counsel during oral argument: *Simmermon v. Gabbianelli*, Civil Action No. 09-5880 (JBS/KMW), 2012 WL 1044322 (D.N.J. Mar. 28, 2012). In *Simmermon*, a towing company asserted that municipal entities retaliated against it after the towing company's owner advocated for changes in certain local ordinances. *Id.* at *3. The plaintiff in *Simmermon* demonstrated that an "open feud" existed between city councilmen and one of plaintiffs' attorneys, that verbal and physical confrontations occurred between the parties, and that statistical evidence showed the disparate treatment of the plaintiffs. *Id.* at *7–8. No analogous facts are alleged here.

When faced with pleadings that were similarly devoid of factual content, courts in this jurisdiction have dismissed them. For instance, in *Mann v. Brenner*, 375 F. App'x 232 (3d Cir. 2010), an aggrieved property-owner asserted that the City of York, Pennsylvania "manipulat[ed] building codes and ordinance violations" to declare his home "'blighted.'" *Id.* at 234. In addition, he argued that he was wrongfully fined by the City of York after successfully defending against municipal code violations. *Id.* at 236. The Third Circuit affirmed the district court's dismissal of this retaliation claim, because "[n]owhere in [the complaint did plaintiff] allege facts that could reasonably support the necessary 'causal link' between his protected speech (successfully defending the initial fines) and the unlawful retaliation (an additional $2,000 fine)." *Id.* Instead, the *Mann* plaintiff offered only "vague and conclusory allegations that he was assessed some unreasonable fine for some unspecified violation, in retaliation for 'cho[osing] to use legal process as a way to protect and extend his rights.'" *Id.*; *see also Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007) (holding that when considering a motion to dismiss, courts "are not compelled to accept unsupported conclusions and unwarranted inferences," or a "legal conclusion couched as a factual allegation") (internal quotation marks and citations omitted). Similarly, Plaintiff here has offered only a conclusion (that there was a link between the protected activity and the retaliation) without asserting any supporting facts that might give rise to a plausible claim of retaliation.

Plaintiff's claim for retaliation contains no factual context for her allegedly protected speech, and no factual support for the conclusion that retaliatory acts were taken in response to either Plaintiff's speech or the assertion of her appeal rights. For these reasons, Count II should be dismissed.

## C.   Count III: Procedural Due Process

The Court has struggled to understand the basis for relief outlined in Count III.  It is entitled "County Defendants' Actions were motivated by Malice and the Intent to Injure: Procedural Due Process- Liberty Interest." (D.I. 1 at pg. 7)  However, the paragraphs within this Count also reference Plaintiff's retaliation claim (*id.* at ¶¶ 44–45), assert that "Defendants have damaged the Plaintiff in both her professional and personal reputation therefore denying her a property interest in her good name and damaging her protected liberty interest," (*id.* at ¶ 48), and contend that by denying Plaintiff the "enjoyment of her land," Defendants acted in an "arbitrary and conscience-shocking manner" (*id.* at ¶ 49).  In other words, although part of the title of Count III suggests it is nominally directed to relief for procedural due process violations, the text of the Count itself does not refer to either general procedural due process law or to the specific process for challenging zoning decisions implicated by this case.

At oral argument, Plaintiff's counsel confirmed that in Count III, Plaintiff intended to assert a procedural due process claim.  (Tr. at 52–53)  In light of this, and in light of the statements in Plaintiff's opposition brief to the same effect, (D.I. 21 at 10), the Court will analyze the claim as such.

The procedural component of the Due Process Clause of the Fourteenth Amendment provides that a state shall not "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV.  "To establish a cause of action for a violation of procedural due process, a plaintiff [must prove] that [1] a person acting under color of state law [2] deprived [her] of a protected property interest [and] [3] that the state procedure for challenging the deprivation does not satisfy the requirements of procedural due process."

*Midnight Sessions, Ltd. v. City of Philadelphia*, 945 F.2d 667, 680 (3d Cir. 1991), *overruled on other grounds by United Artists*, 316 F.3d 392.  At its core, procedural due process is the "opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Matthews v. Eldridge*, 424 U.S. 319, 333 (1976); *see also Perano v. Twp. of Tilden*, 423 F. App'x 234, 237–38 (3d Cir. 2011) (upholding the grant of a motion to dismiss a procedural due process claim where there existed adequate state-based "judicial remedies for challenging administrative land use decisions").

The Delaware Code provides a procedural remedy for any alleged property deprivation from either the County or the Board:

> Any persons jointly or severally aggrieved by a decision of the Board of Adjustment or any taxpayer or any officer, department, board or bureau of the County may present to the Superior Court in and for Sussex County, a petition duly verified, setting forth that such decision is illegal in whole or in part, specifying the grounds of the illegality.  The petition shall be presented to the Court within 30 days after the filing of the decision in the office of the Board.

Del. Code Ann. tit. 9, § 6918(a) (*cited in* D.I. 16 at 12).  The burden is on the Plaintiff, even at this early stage, to put forward sufficient facts to plausibly allege that this procedure does not "satisfy the requirements of procedural due process." *Midnight Sessions*, 945 F.2d at 680. Plaintiff does not reference this statute in the Complaint, nor even allude to the fact that Plaintiff filed an unsuccessful action in Superior Court pursuant to this statute. (*See* D.I. 16, exs. H & I) Where a plaintiff fails to make any allegation regarding the adequacy of the state procedure at issue, dismissal is appropriate. *See, e.g.*, *Nicolette v. Caruso*, 315 F. Supp. 2d 710, 720–21 (W.D. Pa. 2003) (granting a motion to dismiss a claim for violation of procedural due process where plaintiff failed to address this third element of the *Midnight Sessions* analysis, and

22

concluding that Pennsylvania's state procedure for challenging an administrative zoning decision satisfies procedural due process).

In Plaintiff's brief in opposition to the present motion, she appears to acknowledge that she failed to allege sufficient factual content to state a procedural due process claim, noting that "whether Defendant's set procedures challenging the deprivation satisf[y] procedural due process requires a more fully developed factual record." (D.I. 21 at 10; *see also* Tr. at 53) However, before Plaintiff is entitled to engage in discovery, she must state some facts that would support a plausible claim; merely stating that such facts might be uncovered during discovery is insufficient to survive a motion to dismiss. *Twombly*, 550 U.S. at 563 n.8 (noting that "before proceeding to discovery, a complaint must allege facts suggestive of illegal conduct").

Plaintiff's only proffered factual support for this claim appears to be her assertion that she was "intentionally misled by the government defendants in this case" with regard to the process for filing an appeal. (D.I. 21 at 10; D.I. 1 at ¶ 18) However, any allegation of intentional misleading on the part of Defendants falls short of *Twombly*'s requirements for a procedural due process claim, for at least three reasons. First, Plaintiff does not identify who misled her, when this misleading statement took place, or even what the misleading statement was (other than an out-of-context reference to a statement on behalf of unnamed County officials that she "must" request a variance). (D.I. 1 at ¶ 18) Second, Plaintiff's own Complaint indicates only that this "misinformation and failure" resulted in a "delay" of her statutory right of appeal, not a denial of those rights. (*Id.* at ¶ 23) Third, despite any misinformation and delay, Plaintiff was afforded an opportunity to appeal the zoning violations that were issued to her—first to the Board, and then to the Superior Court of Sussex County pursuant to Delaware statutes.

In the absence of any real articulation in the Complaint as to the legal or factual substance of Plaintiff's procedural due process claim, Count III should be dismissed.

### D.    Nature of Dismissal

As noted in the preceding paragraphs, Plaintiff has failed to allege sufficient facts to make out a plausible claim for relief based on any of the counts in the Complaint. However, in this jurisdiction, a court must generally grant leave to amend before dismissing a § 1983 pleading that is merely deficient. *See, e.g., Shane v. Fauver*, 213 F.3d 113, 116–17 (3d Cir. 2000). "Dismissal without leave to amend is justified only on the grounds of bad faith, undue delay, prejudice, or futility." *Alston v. Parker*, 363 F.3d 229, 236 (3d Cir. 2004). There is no evidence that Plaintiff has acted improperly or in bad faith, and Plaintiff has not yet amended her pleading. Although Defendants essentially argue that Plaintiff's claims are futile, the Court concludes that at this early stage, and based on the incomplete record currently before it, Plaintiff should be granted leave to amend.[13] *See, e.g., Mallinckrodt Inc. v. E-Z-EM Inc.*, 671 F. Supp. 2d 563, 567–68 (D. Del. 2009) (granting leave to amend and noting that "[t]he Third Circuit has adopted a liberal policy favoring the amendment of pleadings to ensure that claims are decided on the merits").

## IV.   CONCLUSION

For the foregoing reasons, I recommend that the Court GRANT Defendants' motion to dismiss, but do so without prejudice to allow Plaintiff the opportunity to file an amended complaint that addresses the factual and legal deficiencies outlined above.

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R.

---

[13]    Because of the Court's conclusion in this regard, it need not consider Defendants' additional arguments as to the merits of Plaintiff's due process claims, or that Plaintiff's claims are barred by the doctrine of res judicata.

Civ. P. 72(b)(1), and D. Del. LR 72.1.  The parties may serve and file specific written objections

within fourteen (14) days after being served with a copy of this Report and Recommendation.

Fed. R. Civ. P. 72(b).  The failure of a party to object to legal conclusions may result in the loss

of the right to de novo review in the district court.  *See Henderson v. Carlson*, 812 F.2d 874,

878–79 (3d Cir. 1987); *Sincavage v. Barnhart*, 171 F. App'x 924, 925 n.1 (3d Cir. 2006).

The parties are directed to the Court's Standing Order In Non-Pro Se Matters For

Objections Filed Under Fed. R. Civ. P. 72, dated November 16, 2009, a copy of which is

available at http://www.ded.uscourts.gov/court-info/local-rules-and-orders/general-orders.

Dated: June 1, 2012

_____

Christopher J. Burke
UNITED STATES MAGISTRATE JUDGE